[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-10372

_____

D.C. Docket No. 1:07-cr-20714-CMA-2

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

RENE GONZALEZ PEREZ,
a.k.a. Pipo,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 22, 2013)

Before TJOFLAT and PRYOR, Circuit Judges, and ROTHSTEIN,[*] District Judge.

PER CURIAM:

_____

[*]Honorable Barbara Jacobs Rothstein, United States District Judge for the Western District of Washington, sitting by designation.

## I.     INTRODUCTION

Rene Gonzales Perez ("Perez") appeals his total 131-month sentence for two counts of conspiracy to commit robbery, one count of attempted robbery, and one count of carrying a firearm during and in relation to a crime of violence.  Perez argues on appeal that the district court improperly calculated his Sentencing Guidelines range when the court, pursuant to U.S.S.G. § 2B3.1(b)(2)(E), imposed a three-level possession of a dangerous weapon enhancement, based on a co-conspirator's possession of pepper spray.

## II.     BACKGROUND AND PROCEDURAL HISTORY

 The salient facts to this appeal are as follows:  In late July 2007, a confidential informant discussed potential robbery targets with Onel Salgado, including a check-cashing store in Fort Pierce, Florida and a fictional cocaine stash house in Miami, Florida.  United States v. Perez, 661 F.3d 568, 574 (11th Cir. 2011); cert. denied, 132 S. Ct. 1943 (2012).[1]  Following this conversation, Salgado solicited Perez for assistance in robbing the check-cashing store.  Perez, 661 F.3d at 574.  Perez, in turn, recruited Amilka Del Monte.  Id.

On August 17, 2007, Perez, Del Monte, and Salgado set out to rob the check-cashing store.  Id.  On the way, they stopped at a gun shop to buy pepper spray.  Id.  Later, en route to the check-cashing store, the three discussed that when

---

[1]     Perez is this Court's published opinion on the first direct appeal taken in this case.

a man walked out of the store with a bag of money, Del Monte would spray the man in his eyes with the pepper spray, Perez would punch him, the two would take the bag of money, and then they would jump into the waiting getaway car driven by Salgado. Id. Prior to their arrival at the store, the confidential informant told Salgado, Perez, and Del Monte that a contact had informed him that a large number of police officers had arrived at the store to break up a fight. Id. at 574–75. Based on this information, the co-conspirators decided to return home without committing the robbery.

Robertson McGavock, a Miami-Dade detective, testified that, on the evening of August 17, 2007, he filmed two individuals meeting on the balcony of an apartment. At one point, one of the individuals "acted like he was spraying mace in the eyes of somebody and even acting out like covering his eyes because they were burning." McGavock acknowledged that he could not hear what the two individuals were saying. On cross-examination, McGavock also stated that there was no audio recording of what was said. On re-direct, he testified that based on his training in using pepper spray, it appeared to him that the individual was "[p]reparing a can to be sprayed."

Perez and his co-conspirators were later arrested on August 23, 2007, as they drove to what they believed was a cocaine stash house, with the intent to rob it. Joel Bello, a Miami-Dade police officer, testified that he participated in the arrest

3

of Perez and the other defendants.  Bello recovered a can of pepper spray from one of the defendant's pockets during the arrest.  Richard Checo, an agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), testified that the recovered pepper spray was "Saber Red" brand.

Perez proceeded to a jury trial along with two co-defendants. He was convicted of two counts of conspiracy to commit a robbery, in violation of the Hobbs Act (Counts 1 and 5), one count of attempted robbery, also in violation of the Hobbs Act (Count 6), and one count of possessing a firearm during a violent and drug-related crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count 7).  After the trial, the probation officer filed an initial Presentence Investigation Report ("PSI").  The government objected to the PSI because it did not include a dangerous weapon enhancement under § 2B3.1(b)(2)(E) for Count 1.  The government argued that Perez's co-conspirator's possession of the pepper spray during the aborted check-cashing store robbery warranted the enhancement.  Perez argued that the enhancement did not apply because there was no evidence in the record that the pepper spray was "actual[ly] use[d]" in a manner that constituted a "deadly weapon."  Perez also argued that he never possessed the pepper spray.

The district court sustained the government's objection and applied the three-level dangerous weapon enhancement to Perez's Count I conviction.  In applying the three-level enhancement, the district court made no factual findings

4

with regard to the dangerousness of the pepper spray at issue or as to pepper spray generally.  The enhancement increased Perez's total offense level to 25.  The court then sentenced Perez to a total 140-month sentence.

Perez appealed his conviction and sentence, arguing, inter alia, that, at sentencing, the district court failed to offer him his right of allocution, and improperly enhanced his sentence for possession of a dangerous weapon.  In United States v. Perez, this Court held that the district court committed plain error in failing to afford Perez his right of allocution.  Perez, 661 F.3d at 583.  The Court expressly declined to consider Perez's other arguments on appeal.  Id.

On remand, the district court allowed Perez to allocate.  After the allocution, Perez argued once again that the dangerous weapon enhancement was improper, and that it was still a viable issue for the district court to consider.  Without reconsidering the enhancement and, again, without making any findings of fact regarding the same, the district court reduced Perez's sentence to 131 months.

Upon inquiry, Perez reiterated his objection to the dangerous weapon enhancement.

### III.    DISCUSSION

We review de novo the district court's application of the Sentencing Guidelines, including the imposition of a dangerous weapon enhancement.  United States v. Miller, 206 F.3d 1051, 1052 (11th Cir. 2000).

The Sentencing Guideline for robbery instructs that a defendant's offense level shall be increased by three levels "if a dangerous weapon was brandished or possessed" during the crime. U.S.S.G. § 2B3.1(b)(2)(E).  A weapon is dangerous for purposes of the Guidelines if it is "an instrument capable of inflicting death or serious bodily injury."  Id. at § 1B1.1, comment. (n. 1(D)).  Serious bodily injury, in turn, "means injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental facility; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation."  Id. at § 1B1.1, comment. (n. 1(L)).

Perez argues that the government made no evidentiary showing as to whether the particular canister of pepper spray that his co-conspirator possessed was capable of inflicting serious bodily injury.  According to Perez, the evidentiary record is silent as to the form or nature of the pepper spray, its chemical composition, the strength or concentration of the active agent, the size of the can, whether the spray mechanism was functional, or the distance or velocity the mechanism was designed to achieve.  Nor did the government present any evidence on the dangerousness of pepper spray generally.  What is more, Perez argues, the district court made no factual findings with respect to pepper spray and the appropriateness of applying the dangerous weapon enhancement to Count I.

6

The government counters that the pepper spray at issue is a dangerous weapon because Perez intended for his co-conspirator to use it to incapacitate the victim so that Perez could hit the victim and take the cash from him. The government contends that the district court was able to ascertain the dangerousness of the pepper spray from the brand name, "Red Saber," and the label on the canister itself, which warns of the "dangerous" nature of its contents, and from the surveillance video that allegedly shows that Perez intended to spray the victim in the eyes. The government also argues that this Court may take notice of the dangerous nature of pepper spray generally, based on the holdings in other cases that have recognized that pepper spray is a dangerous weapon.

We conclude that the district court erred when it enhanced Perez's sentence for possession of a dangerous weapon. In applying the enhancement, the district court necessarily concluded that the pepper spray in question was a dangerous weapon within the meaning of the Sentencing Guidelines. However, the government did not produce sufficient evidence on which the court could base such a conclusion. The government can point the Court only to the brand name of the pepper spray, the label on the canister, which warns that its contents are "dangerous," and the video that allegedly depicts how Perez intended to use the pepper spray. Neither a brand name nor a warning label, alone or taken together, establish that a weapon is a "dangerous weapon" under the Guidelines. First, the

warning on the canister's label does not establish that the contents of the canister are capable of inflicting a <u>serious</u> bodily injury.  The fact that someone may have to wash an affected area for 15 minutes or seek medical attention does not establish that the spray could cause "<u>extreme</u> physical pain or the <u>protracted</u> <u>impairment</u> of a function of a bodily member, organ, or mental facility; or requir[e] medical intervention such as <u>surgery</u>, <u>hospitalization</u>, or <u>physical</u> <u>rehabilitation</u>."  U.S.S.G. § 1B1.1, comment. (n. 1(L)) (emphasis added).  Indeed, the government conceded at oral argument that the canister's label does not provide enough information to allow this Court to determine whether the pepper spray was capable of causing serious bodily injury.  Furthermore, a label created by the manufacturer of a substance is not particularly reliable evidence given its self-serving nature.  <u>See</u>, e.g., <u>United States v. Harris</u>, 44 F.3d 1206, 1216 (3rd Cir. 1995); <u>cert</u>. <u>denied</u>, 115 S. Ct. 1806 (1995) (concluding that promotional pamphlet provided an inadequate basis for concluding that the pepper spray in question was a dangerous weapon).

Nor does the video provide a sufficient basis on which to find that the pepper spray is a dangerous weapon.  The government contends that the video shows that Perez intended to spray the victim directly in the eyes with the pepper spray.  Even if this Court were to credit the government's interpretation of what the video depicts, how Perez intended to use the pepper spray does not qualify it as a dangerous weapon, <u>i.e.</u>, "an instrument capable of inflicting death or serious bodily

8

injury."  To state it differently, regardless of how Perez <u>intended</u> to use the pepper spray, the record is devoid of any evidence that the spray is <u>actually</u> <u>capable</u> of inflicting a serious bodily injury.[2]

As this Court has previously stated, the imposition of a sentence enhancement without sufficient factual support is legal error.  <u>United States v. Dunlap</u>, 279 F.3d 965, 967 (11th Cir. 2002) (lack of an evidentiary foundation for the application of guideline was plain error); <u>United States v. Chisholm</u>, 73 F.3d 304, 308-09 (11th Cir. 1996) (it was plain error for trial court to sentence defendant under a harsher guidelines schedule absent any evidence establishing a conversion ratio for powder and crack cocaine); <u>United States v. Ramsdale</u>, 61 F.3d 825, 832 (11th Cir. 1995) (vacating sentence because the district court committed plain error when it failed to make any findings as to the type of methamphetamine involved in the crime).  Here, the government failed to introduce sufficient evidence as to the dangerousness of the pepper spray. Therefore, the enhancement for possession of a dangerous weapon was improper.

---

[2]    Compare <u>United States v. Dukovich</u>, 11 F.3d 140 (11th Cir. 1994); <u>cert.</u> <u>denied</u>, 114 S. Ct. 2112 (1994) in which we affirmed a finding that tear gas constituted a dangerous weapon. There, the government introduced evidence, at the sentencing hearing, that "tear gas can cause eye damage, vomiting, loss of breath or a rash, and pregnant women should not be exposed to it." <u>Id</u>. at 142. A police officer testified as to the physiological harm tear gas can cause. <u>Id</u>.  The government also presented evidence of the harms that befell the victims—one of whom was pregnant at the time of the tear gas attack. <u>Id</u>.

Accordingly, we vacate Perez's sentence. On remand, the district court shall not apply the enhancement for possession of a dangerous weapon. Perez has consistently objected to the enhancement at both of his sentencing hearings and in his appeals to this Court. The government has had two opportunities to introduce sufficient evidence to establish that the pepper spray is a dangerous weapon. It failed to do so. The government will not be given a third opportunity. See, e.g., United States v. Alred, 144 F.3d 1405, 1422 (11th Cir. 1998) (remanding for resentencing with the instruction not to apply the enhancement for leadership role in the crime).

## IV.    CONCLUSION

Accordingly, we **VACATE** and **REMAND** for resentencing without enhancement for possession of a dangerous weapon.