United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 21, 2004**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT

———————————

No. 03-20466

———————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ISRAEL DOMINGUEZ-HERNANDEZ,

Defendant-Appellant.

_____

Appeal from United States District Court
for the Southern District of Texas
USDC No. 02-CR-700

_____

Before DAVIS, PRADO, and PICKERING, Circuit Judges.

PER CURIAM:[*]

The appellant, Israel Dominguez-Hernandez ("Dominguez"), a citizen of Mexico, was

convicted of the Texas offense of involuntary manslaughter on November 23, 1987, and was

sentenced to serve six years in prison. On January 25, 1990, he was deported to Mexico. On

October 19, 2001, a federal immigration official found Dominguez within the United States. At

the time, Dominguez was incarcerated in a prison located in Huntsville, Texas, while serving a

one-year sentence for possession of cocaine. Thereafter, Dominguez was charged by indictment

with being illegally present in the United States subsequent to deportation under 8 U.S.C. §

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

1326(a) & (b)(2) (1999).  Dominguez pled guilty.  He was sentenced on April 28, 2003.

Applying the 2002 edition of the United States Sentencing Guidelines, the probation officer who prepared the presentencing report ("PSR") recommended a sixteen-level upward adjustment to Dominguez's base offense level of eight due to the fact that Dominguez's 1987 conviction of involuntary manslaughter constituted a "crime of violence" as defined by Sentencing Guideline § 2L1.2(b)(1)(A)(ii).  Dominguez objected to the adjustment, arguing that the 2000 Guidelines, the guidelines in effect at the time of his offense,[1] should be applied and that under the 2000 Guidelines the sixteen-level enhancement would not apply.

The district court overruled Dominguez's objection on the ground that the sixteen-level enhancement would apply under either edition of the guidelines.  Dominguez was sentenced to 80 months imprisonment.  Dominguez now appeals his sentence arguing that the district court erred in concluding that the sixteen-level enhancement applied under the 2000 edition of the Guidelines.

There is no question that Dominguez met the criteria for a sixteen-level enhancement under the 2002 Guidelines, which specifically provide that manslaughter is a "crime of violence." Question exists, however, as to whether Dominguez qualifies for the sixteen-level enhancement under the 2000 Guidelines.  Under the 2000 Guidelines, the issue depends on whether involuntary

---

[1]  It is undisputed that the offense for which Dominguez was convicted is deemed to have occurred on October 19, 2001.  The crime of illegal reentry occurs on the date on which the defendant is "found" in the United States by immigration authorities.  See 8 U.S.C. 1326 (1999); United States v. Asibor, 109 F.3d 1023, 1032 (5th Cir. 1997) (an alien is "found" when his physical presence is discovered and noted by the immigration authorities), cert. denied, 522 U.S. 902 (1997).  As noted by the PSR, Dominguez was "found" by immigration authorities on October 19, 2001.

manslaughter is a "crime of violence" under 18 U.S.C. § 16.[2]

If involuntary manslaughter does not qualify as a "crime of violence" under 18 U.S.C. § 16, then under the 2000 Guidelines the four-level, not the sixteen-level, enhancement applies. Because the ex post facto clause prohibits "the retroactive application of the sentencing guidelines if it results in a more onerous penalty," United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999), Dominguez contends that the district court should have applied the 2000 Sentencing Guidelines.

The government contends that because Dominguez did not specifically mention the ex post facto clause in his objection to the PSR he failed to preserve the issue on appeal. We reject this argument. Despite Dominguez's failure to specifically mention the ex post facto clause in his objection, we find that the basis of his objection was obvious to both the government and to the district court. The probation officer specifically addressed the ex post facto clause in his response to Dominguez's objection, and the district court squarely ruled on the issue. See United States v. Krout, 66 F.3d 1420, 1434 (5th Cir. 1995) (a party must "raise a claim of error with the district court in such a manner so that the district court may correct itself and thus, obviate the need for our review"). We therefore review the district court's application of the sixteen-level enhancement de novo. See Venegas v. Henman, 126 F.3d 760, 761 (5th Cir. 1997).

---

[2] Section 2L1.2 provides for a sixteen-level enhancement only if the conviction was for an "aggravated felony." See U.S.S.G. § 2L1.2(b)(1)(A) (Nov. 1, 2000). Otherwise, a four-level enhancement applies. See U.S.S.G. § 2L1.2(b)(1)(B) (Nov. 1, 2000). The Application Notes following section 2L1.2 instruct that the term "aggravated felony" is defined at 8 U.S.C. § 1101(a)(43). Subsection F of 8 U.S.C. § 1101(a)(43), which is the only subsection relevant to this case, defines "aggravated felony" with reference to a "crime of violence" as defined in section 16 of title 18. See 8 U.S.C. § 1101(a)(43)(F) (1999).

The question we must decide is whether the Texas offense of involuntary manslaughter constitutes a "crime of violence" under 18 U.S.C. § 16. We find that it does not.

Section 16 of title 18 defines an offense as "a crime of violence" under two definitions. Section 16(a) defines a "crime of violence" as "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another[.]" 18 U.S.C. § 16(a) (2000). Section 16(b) provides:

> The term 'crime of violence' means
> . . . .
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16(b) (2000).

Under Texas law, a person commits involuntary manslaughter if he "recklessly causes the death of an individual." See Texas Penal Code § 19.04(a)(1) (Vernon 2003);[3] Johnson v. State, 915 S.W.2d 653, 658 (Tex. App. Houston 1996). It is clear that the Texas involuntary manslaughter statute does not require that the government establish the use of intentional physical force to obtain a conviction. See Dillon v. State, 574 S.W.2d 92, 93-95 (Tex. Crim. App. 1978) (defendants found to have violated the involuntary manslaughter statute by "failing to provide necessary food and medical care as was their duty as parents").

---

[3] The Texas Manslaughter statutes provides in full as follows:

> **Manslaughter**
> (a) A person commits an offense if he recklessly causes the death of an individual.
> (b) An offense under this section is a felony of the second degree.

Tex. Penal Law § 19.04 (Vernon 2003).

4

The decision in this case is controlled by two previous decisions of this Court. In <u>United States v. Vargas-Duran</u>, 356 F.3d 598, 605 (5th Cir. 2004) (en banc), the Fifth Circuit, sitting <u>en banc</u>, held that an offense does not fall within Application Note 1(B)(ii)(I) of Sentencing Guideline § 2L1.2 unless that offense required that the state prove that the offender used, threatened to use, or attempted to use intentional physical force against the person or property of another in order to obtain a conviction for the offense. The language of Application Note 1(B)(ii)(I) of Sentencing Guideline § 2L1.2 is identical in all material aspects to 18 U.S.C. § 16(a). <u>Compare</u> U.S.S.G. § 2L1.2, cmt. n.1(B)(ii)(I) (Nov. 1, 2001) <u>with</u> 18 U.S.C. § 16(a); <u>see also Vargas-Duran</u>, 356 F.3d at 604 (because of the similarity in language, applying principles behind the court's interpretations of 18 U.S.C. § 16 to its interpretation of the Sentencing Guideline).

In <u>United States v. Gracia-Cantu</u>, 302 F.3d 308, 312 (5th Cir. 2002), the Fifth Circuit held that the Texas offense of injury to a child was not a crime of violence under 18 U.S.C. § 16(b). The court found that "many convictions for this offense involve an omission rather than an intentional use of force" and that therefore "in many cases the offense of the injury to a child does not involve the substantial likelihood of an intentional use of force." Based on this finding, the court concluded that "the offense is not 'by its nature' a crime of violence under 18 U.S.C. § 16(b)." <u>Id.</u> at 313.

Based on the decisions of this Court in <u>Vargas-Duran</u> and <u>Garcia-Cantu</u>, we find that involuntary manslaughter is not a crime of violence under § 16.

## CONCLUSION

For the foregoing reasons, the sentence applied by the district court is vacated, and we

5

remand this case for resentencing in accordance with this opinion.

VACATED and REMANDED.