# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-60552

United States Court of Appeals
Fifth Circuit

**FILED**

August 19, 2015

Lyle W. Cayce
Clerk

CARLOS IBARRA-LEYVA,

Petitioner

v.

JEH CHARLES JOHNSON, SECRETARY, DEPARTMENT OF
HOMELAND SECURITY,

Respondent

Petition for Review of an Order of the
Board of Immigration Appeals
BIA No. A043 493 579

Before HIGGINBOTHAM, DENNIS, and HAYNES, Circuit Judges.

PER CURIAM:*

The federal government may order that an immigrant who commits certain offenses be removed from the country. If the alien returns, that removal order may be reinstated. Federal courts have limited jurisdiction to review these orders. In our circuit, if an alien challenges a reinstatement order by raising a collateral attack on the underlying order of removal, we have

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-60552

jurisdiction to hear the petition only if the initial removal proceedings constituted a gross miscarriage of justice.

Carlos Ibarra-Leyva was convicted of manslaughter in state court, and the government, concluding that manslaughter was a "crime of violence" rendering him removable under the Immigration Act, ordered him deported. Ibarra-Leyva illegally reentered, was apprehended, and his removal order was reinstated. He now challenges that reinstatement, arguing that because our court has since held that manslaughter was not a crime of violence, his initial removal was improper.

Because it was not clear at the time the removal proceedings became final that the agency was in error, we hold that the initial proceedings did not constitute a gross miscarriage of justice. We dismiss this petition for want of jurisdiction.

I.

Carlos Ibarra-Leyva, a native and citizen of Mexico, was admitted to the United States as a lawful permanent resident in 1992. Four years later, Ibarra-Leyva crashed his car and killed Claudia Cruz. He was convicted of manslaughter in Texas state court and sentenced to ten years in prison.

In 1998, the former Immigration and Naturalization Service began removal proceedings against Ibarra-Leyva on the grounds that he had been convicted of an aggravated felony.[1] After notice and a hearing, an immigration judge found him removable. Ibarra-Leyva appealed to the Board of Immigration Appeals, arguing that the agency had violated his due process rights.[2] The BIA disagreed.

---

[1] "Any alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii).

[2] Ibarra-Leyva alleged four errors: "(1) that the Notice to Appear fails to state the date, time, and place of the removal hearing; (2) that the respondent was not provided a current list of pro bono legal services with the Notice to Appear; (3) that the Notice to Appear is not

No. 14-60552

In affirming, the BIA also held that manslaughter was a "crime of violence," a species within the genus of the "aggravated felon[ies]" that render an alien deportable.[3] Such crimes include "any . . . offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."[4] Then, as now, "[a] person commits [manslaughter under Texas law] if he recklessly causes the death of an individual."[5] The BIA concluded that:

> [R]ecklessly causing the death of another does, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense. We also note that [m]anslaughter has been recognized to constitute a "crime of violence," even though the mental element is "recklessness" rather than "specific intent."

In support of that latter proposition, the BIA cited to one of its earlier decisions and an opinion from the Ninth Circuit. In the penultimate paragraph of its order, the agency also stated that "[i]n the present case, because the respondent drove his vehicle over 86 miles per hour on the wrong side of the road, he caused an automobile collision that killed a woman."

Ibarra-Leyva petitioned our court for review of the BIA's removal order. The BIA moved to dismiss the petition, arguing that because Ibarra-Leyva was removable because he committed an aggravated felony, our court lacked jurisdiction to review the order under 8 U.S.C. § 1252(a)(2)(C).[6] We concurred,

---

signed by the proper authority; and (4) that the Notice to Appear does not sufficiently advise the respondent on the basis on which he is alleged to be removable."

[3] 8 U.S.C. § 1101(a)(43)(F) ("The term 'aggravated felony' means – a crime of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment [is] at least one year.").

[4] 18 U.S.C. § 16(b).

[5] Tex. Penal Code. § 19.04(a).

[6] 8 U.S.C. § 1252(a)(2)(C) states that "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in . . . [section] 1227(a)(2)(A)(iii) ["aggravated felonies"]. Our jurisdiction in such cases is limited solely to determine whether the required condition, in

No. 14-60552

and in June 1999 we dismissed the petition for lack of jurisdiction. Ibarra-Leyva was removed from the country in 2001.

He subsequently reentered the United States illegally, was arrested, and in 2014 the Department of Homeland Security gave him notice of an intent to reinstate the original removal order. Ibarra-Leyva challenged the proposed reinstatement, arguing that in its original removal order, the BIA had "committed errors . . . resulting in a gross miscarriage of justice." He pointed to *United States* v. *Dominguez-Hernandez*,[7] an unpublished opinion issued by our court in 2004, where we had held that the manslaughter offense under which Ibarra-Leyva was convicted is not a "crime of violence." By concluding otherwise, he argued, the BIA had grievously erred. The BIA disagreed, and reinstated the original removal order.

This petition for review of the reinstatement order follows.

II.

A.

Our ability to consider this petition is limited. Congress has, as a general matter, explicitly exempted reinstatement orders from appellate review.[8] That broad rule has a notable limitation: courts may still review "constitutional claims or questions of law raised [in] a petition for review."[9] We have construed this provision narrowly. "Any collateral attack on an

---

this case, that the petitioner has committed an aggravated felony, exists. *See Okoro* v. *INS*, 125 F.3d 920, 925 & n.10 (5th Cir. 1997). Once we conclude that the condition exists, we must dismiss the appeal for lack of jurisdiction. *See Flores-Garza* v. *INS*, 328 F.3d 797, 801-02 (5th Cir. 2003).

[7] 98 F. App'x 331, 334 (5th Cir. 2004) (unpublished).

[8] *See* 8 U.S.C. § 1231(a)(5) ("If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, *the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed*, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.") (emphasis added).

[9] *Id.* § 1252 (a)(2)(D).

underlying order of removal, including constitutional or legal questions, however, may be considered only if the alien demonstrates that . . . the initial removal proceedings constituted a gross miscarriage of justice."[10]   In our circuit, the gross miscarriage requirement is jurisdictional.[11]   We, of course, maintain jurisdiction to determine our own jurisdiction.[12]   Our task is not to determine the wisdom or textual moorings of the "gross miscarriage" exception; suffice it to say that it is our court's precedent.

We have been chary to define affirmatively "gross miscarriage of justice,"[13] and have limited ourselves to saying what it is not.   It does not include situations "where the petitioner failed to contest his removability in prior proceedings" or waives appeal.[14]   Nor does it include challenges to an aggravated felony determination where the government "did not inform [the petitioner] of the specific conviction that qualified as an aggravated felony," at least so long the petitioner was given general notice that he was deportable under the aggravated felony prong.[15]

The Third and Ninth Circuits, along with the BIA itself, have identified one context where a gross miscarriage of justice may lie: when the removal order the petitioner collaterally challenges was clearly unlawful under the law

---

[10] *Martinez* v. *Johnson*, 740 F.3d 1040, 1042 (5th Cir. 2014); *see also Ramirez-Molina* v. *Ziglar*, 436 F.3d 508, 514 (5th Cir. 2006); *Lara* v. *Trominski*, 216 F.3d 487, 492-93 (5th Cir. 2000).

[11] *Martinez*, 740 F.3d at 1042-43; *Ramirez-Molina*, 436 F.3d at 514; *see also Banuelas-Perez* v. *Napolitano*, 538 F. App'x 531, 532 (5th Cir. 2013) (unpublished).

[12] *Marquez-Marquez* v. *Gonzalez*, 455 F.3d 548, 554 (5th Cir. 2006) (citing *Lopez-Elias* v. *Reno*, 209 F.3d 788, 791 & n.3 (5th Cir. 2000)).

[13] *See Ramirez-Molina*, 436 F.3d at 514 ("This court has yet to develop a precise standard for what constitutes a gross miscarriage of justice sufficient to allow us to consider the merits of a petitioner's collateral attack on a removal order.").   We have emphasized that "findings of a gross miscarriage of justice are . . . rare." *Lara*, 216 F.3d at 493.

[14] *Martinez*, 740 F.3d at 1042; *see also Ramirez-Molina*, 436 F.3d at 514-15.

[15] *Banuelas-Perez*, 538 F. App'x at 532.

No. 14-60552

that existed at the time of the original removal proceeding.[16] We are asked to adopt this exception in our own circuit. We need not decide whether to do so, however, for even assuming that standard controls, Ibarra-Leyva would not satisfy it.

B.

We now turn to whether Ibarra-Leyva's order of removal was clearly unlawful at the time it became final. It was not.

In 1999, the BIA concluded that involuntary manslaughter, as defined in Texas Penal Code § 19.04, was a "crime of violence" as defined in 18 U.S.C. § 16(b), because it "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."[17] Five years later, in *United States* v. *Dominguez-Hernandez*, our court disagreed, holding in an unpublished opinion that because the Texas manslaughter statute "does not require that the government establish the use of intentional physical force," it was not a crime of violence under then-governing Fifth Circuit case law.[18]

Ibarra-Leyva argues that *Dominguez-Hernandez*'s interpretation represents the law as it always was. We disagree. Rather, a careful look at our circuit's case law shows that our jurisprudence shifted as our definition of

---

[16] *See, e.g.*, *Debeato* v. *Att'y Gen. of U.S.*, 505 F.3d 231, 236 (3d Cir. 2007) (adopting a standard which finds a gross misconduct of justice "only when the individual should not have been deported based on the law as it existed at the time of the original deportation") (quoting *Robledo-Gonzales* v. *Ashcroft*, 342 F.3d 667, 682 n.13 (7th Cir. 2003) (emphasis and internal quotation marks omitted)); *Arreola-Arreola* v. *Ashcroft*, 383 F.3d 956, 958 (9th Cir. 2004) (rejecting a challenge to a reinstatement order because the "removal order was lawful under the law at the time [the petitioner] was deported") (internal quotation marks omitted), *abrogated on other grounds by Morales-Izquierdo* v. *Gonzalez*, 486 F.3d 484 (9th Cir. 2008); *Matter of Malone*, 11 I. & N. Dec. 730, 731-32 (BIA 1966) (concluding that there had been a gross miscarriage of justice when "on the basis of judicial and administrative decisions existing at the time of the original proceeding, no order of deportation should have entered").

[17] 18 U.S.C. § 16(b).

[18] 98 F. App'x 331, 334 (5th Cir. 2004) (unpublished).

"crime of violence" narrowed. We begin in the 1990s. There, in a string of decisions we affirmed as crimes of violence offenses where the defendant's actions created a "substantial risk that force will be used."[19] Following this principle, we held that burglary was a crime of violence,[20] as was the unauthorized use of a motor vehicle,[21] felony DWI,[22] and indecency with a child.[23] These cases all used a similar analytical approach: they looked at whether there was a substantial risk that force would be used in the commission of the offense, rather than considering whether the defendant had the specific intent to use that force.[24] Other circuits had similarly held that

---

[19] *United States* v. *Guadardo*, 40 F.3d 102, 104 (5th Cir. 1994) (quoting *United States* v. *Flores*, 875 F.2d 1110, 1113 (5th Cir. 1989)).

[20] *Id.* at 104-05 (burglary of a habitation); *see also United States* v. *Rodriguez-Guzman*, 56 F.3d 18, 20-21 (5th Cir. 1995) (burglary of a nonresidential structure or vehicle), *overruled on other grounds, as recognized by United States* v. *Turner*, 305 F.3d 349, 350 (5th Cir. 2002).

[21] *United States* v. *Galvan-Rodriguez*, 169 F.3d 217, 219 (5th Cir. 1999).

[22] *Camacho-Marroquin* v. *INS*, 188 F.3d 649, 652 (5th Cir. 1999), *opinion withdrawn on other grounds*, 222 F.3d 1040 (5th Cir. 2000).

[23] *United States* v. *Velazquez-Overa*, 100 F.3d 418, 422 (5th Cir. 1996).

[24] *See, e.g.*, *Galvan-Rodriguez*, 169 F.3d at 219 ("Just as burglary of a vehicle involves a substantial risk that property might be damaged or destroyed in the commission of the offense, the unauthorized use of a vehicle likewise carries a substantial risk that the vehicle might be broken into, 'stripped,' or vandalized, or that it might become involved in an accident, resulting not only in damage to the vehicle and other property, but in personal injuries to innocent victims as well."); *Velazquez-Overa*, 100 F.3d at 422 ("Appellant was convicted of sexually molesting children. We think it obvious that such crimes typically occur in close quarters, and are generally perpetrated by an adult upon a victim who is not only smaller, weaker, and less experienced, but is also generally susceptible to acceding to the coercive power of adult authority figures. A child has very few, if any, resources to deter the use of physical force by an adult intent on touching the child. In such circumstances, there is a significant likelihood that physical force may be used to perpetrate the crime.").

crimes without an explicit specific intent requirement, including involuntary manslaughter, could qualify as crimes of violence.[25] So had the BIA.[26]

In the early 2000s, after Ibarra-Leyva's appeals were dismissed, our approach to the mental state necessary for a crime to be "of violence" began to shift. The change began in 2001. First, in *United States* v. *Chapa-Garza*,[27] we again reviewed a felony DWI conviction, and this time we held it was not a crime of violence. We held that specific intent *was* required under the statute, holding that:

> [S]ection 16(b) refers only to those offenses in which there is a substantial likelihood that the perpetrator will intentionally employ physical force. The criterion that the defendant use physical force against the person or property of another is most reasonably read to refer to intentional conduct, not an accidental, unintended event.[28]

While we concluded that section 16(b) did not cover an offense with an accidental or negligent mental state toward the use of force, we did hold that statute covered offenses that "require[] recklessness as regards the substantial

---

[25] *See, e.g.*, *Park* v. *INS*, 252 F.3d 1018, 1021-22 (9th Cir. 2001) (relying on *United States* v. *Springfield*, 829 F.2d 860 (9th Cir. 1987), for the proposition that "involuntary manslaughter under California law is a 'crime of violence' under 18 U.S.C. § 16(b)"), *overruled by Fernandez-Ruiz* v. *Gonzales*, 466 F.3d 1121 (9th Cir. 2006); *Le* v. *U.S. Atty. Gen.*, 196 F.3d 1352, 1354 (11th Cir. 1999) (holding that driving under the influence with serious bodily injury, which required only that the defendant "operated a vehicle while under the influence" and "that as a result of such operation he caused serious bodily injury to another," was a crime of violence), *abrogated by Leocal* v. *Ashcroft*, 543 U.S. 1 (2004); *United States* v. *Moore*, 38 F.3d 977, 981 (8th Cir. 1994) ("[Involuntary manslaughter] is a crime which, by definition, always results in the unlawful death of another human being. As such, it is a crime in which there inheres the substantial risk that physical force will be used in its commission."), *abrogation recognized by United States* v. *Torres-Villalobos*, 487 F.3d 607 (8th Cir. 2007).

[26] *Matter of Alcantar*, 20 I. & N. Dec. 801, 806-09 (BIA 1994).

[27] 243 F.3d 921 (5th Cir. 2001).

[28] *Id.* at 926; *see also id.* at 927 ("The crime of Texas felony DWI is committed when the defendant, after two prior DWI convictions, begins operating a vehicle while intoxicated. *Intentional* force against another's person or property is virtually never employed to commit this offense.").

likelihood that the offender will intentionally employ force against the person or property of another in order to effectuate the commission of the offense."[29]

Later that year, in *United States* v. *Ortiz-Irigoyen*,[30] an unpublished opinion, we turned to the question of whether an Oregon manslaughter statute which defined manslaughter as a criminal homicide "committed recklessly,"[31] was a crime of violence. It was, we said, concluding that a "reckless second-degree manslaughter conviction, which resulted in the death of another person, by definition presented a substantial risk that physical force against the person or property of another might be used in the course of committing the offense."[32]

We built upon *Chapa-Garza* in *United States* v. *Garcia-Cantu*,[33] a 2002 decision where we held that the Texas state felony of "injury to a child" was not a crime of violence.[34] The felony failed to meet that marker because intentionality was not a required element. As written, we concluded, the statute allowed for convictions "involv[ing] an omission rather than an intentional use of force," and so it would not "by its nature" be a crime of violence.[35] We specifically highlighted reckless omissions as offenses that would not be crimes of violence, further limiting section 16(b)'s acceptable mental states.[36]

This leads to *Dominguez-Hernandez* in 2004. There, relying exclusively on the single sentence in *Garcia-Cantu* that is quoted above, our court

---

[29] *Id.* at 927.

[30] 31 F. App'x 152, 2011 WL 1747724 (5th Cir. 2001) (unpublished).

[31] Or. Rev. Stat. § 163.125(1).

[32] *Ortiz-Irigoyen*, 31 F. App'x at 152.

[33] 302 F.3d 308 (5th Cir. 2002).

[34] The relevant statute provided that "[a] person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence, by act or intentionally, knowing, or recklessly by omission, causes to a child, elderly individual, or disabled individual: (1) serious bodily injury; (2) serious mental deficiency, impairment, or injury; or (3) bodily injury." Tex. Penal Code. §22.04(a).

[35] *Garcia-Cantu*, 302 F.3d at 312.

[36] *See id.* at 312-13.

No. 14-60552

concluded that involuntary manslaughter was not a crime of violence under section 16(b).[37] To date, our court has not issued a published opinion squarely addressing whether Texas's involuntary manslaughter statute is a crime of violence.

Finally, a couple of months after *Dominguez-Hernandez*, the Supreme Court stepped in. In *Leocal* v. *Ashcroft*,[38] the Court addressed the question of whether a DUI causing serious bodily injury was a "crime of violence" under section 16(b). It held it was not, reasoning that a "crime of violence" encompassed only those offenses presenting a "substantial risk" that the defendant would *use force* in order to commit the offense, not merely "that injury will result from a person's conduct."[39] Offenses criminalizing an accidental or negligent mental state toward the use of force would not fall into this category; the Court specifically declined to reach the question of whether recklessness toward the use of force would suffice.[40]

In short, our circuit's law evolved between 1999 and 2004, with an inflection point in 2001 – several years after Ibarra-Leyva's appeals to the agency and our own court had been dismissed. It follows that the BIA's conclusion that Ibarra-Levya's manslaughter conviction was a "crime of violence" was not, at the time the ruling became final, clearly wrong.

## C.

Ibarra-Leyva also argues that the BIA erred by failing to apply a categorical approach to determine whether manslaughter was a crime of violence under section 16(b). We cannot agree.

---

[37] 98 F. App'x 331, 334 (5th Cir. 2004).

[38] 543 U.S. 1 (2004).

[39] *Id.* at 11 n.7.

[40] *See id.* at 11, 13. Many circuits have subsequently held that recklessness offenses fall outside the scope of section 16(b). *See United States* v. *Fish*, 758 F.3d 1, 9-10 & n.4 (1st Cir. 2014) (collecting cases).

No. 14-60552

Under our court's case law governing at the time of the BIA's decision, as now, a reviewing court must use a categorical approach to determine whether a crime "by its nature, involves a substantial risk that physical force . . . may be used."[41] When using a categorical approach "[a] sentencing court need only consider the fact that [the defendant] was convicted and the inherent nature of the offense." It does not look to "the conduct underlying the defendant's conviction."[42]

Here, the BIA, after defining section 16(b), stated:

> This Board recognizes that recklessly causing the death of another does, by its nature, involve a substantial risk that physical force against the person or property of another may be used in the course of committing the offense. We also note that Manslaughter has been recognized to constitute a "crime of violence," even though the mental element is "recklessness" rather than "specific intent."

> In the present case, because the respondent drove his vehicle over 86 miles per hour on the wrong side of the road, he caused an automobile collision that killed a woman. The respondent was sentenced to 10 years' imprisonment for this offense. We conclude that the respondent's crime constitutes a "crime of violence" under the Act.

In the second paragraph, the BIA stated, in one sentence, the facts underlying Ibarra-Leyva's conviction. But this single sentence does not vitiate the BIA's categorical approach. In the first quoted sentence, the BIA applied the elements of the Texas statute, in this case, "recklessly causing the death of another," to the requisite components of section 16(b). In the second sentence, it cited to case law which had applied the categorical approach to conclude that these offenses were crimes of violence. This is the application of substantive criminal law to the threshold federal statute that the categorical approach

---

[41] 18 U.S.C. § 16(b).

[42] *United States* v. *Velazquez-Overa*, 100 F.3d 418, 421 (5th Cir. 1996).

11

No. 14-60552

requires.    While the BIA did mention Ibarra-Leyva's conduct, it did not compare that conduct to the elements of the section 16(b), which it was forbidden to do.  As such, that mention was dictum: "it could have been deleted without seriously impairing the analytical foundations of the holding."[43]  The BIA was imprecise – but we cannot conclude it committed clear legal error.

## III.

We DISMISS this petition for WANT OF JURISDICTION.[44]

---

[43] *Int'l Truck & Engine Corp.* v. *Bray*, 372 F.3d 717, 721 (5th Cir. 2004) (quoting *Gochioca* v. *Johnson*, 238 F.3d 278, 286 n.11 (5th Cir. 2000)).

[44] Because we dismiss this appeal on jurisdictional grounds, we need not decide whether 8 U.S.C. § 1252(b)(1)'s requirement that petitions for review of orders of removal be "filed not later than 30 days after the date of the final order" independently divests our court of jurisdiction.  *See, e.g.*, *Verde-Rodriguez* v. *Attorney Gen.*, 734 F.3d 198, 202-03 (3d Cir. 2013); *Cordova-Soto* v. *Holder*, 659 F.3d 1029, 1032 (10th Cir. 2011).