# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

May 14, 2018

Lyle W. Cayce
Clerk

No. 17-10838

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

ELISEO BENJAMIN GODOY, also known as Eliseo Galindo, also known as Carlos Garcia, also known as Eliseo Godoy,

Defendant–Appellant.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:16-CR-440-1

Before OWEN, SOUTHWICK, and WILLETT, Circuit Judges.

DON R. WILLETT, Circuit Judge:[*]

In this sentencing appeal, Eliseo Godoy contends the district court should have used the 2015 Sentencing Guidelines (those in effect when he committed his offense) rather than the 2016 Guidelines (those in effect when he was sentenced). The post-offense Guidelines, complains Godoy, impose a higher sentencing range, thus violating the Ex Post Facto Clause.[1] He cites two 2018 decisions—one from this Court and one from the United States

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] U.S. CONST. art. 1, § 9, cl. 3.

No. 17-10838

Supreme Court—to buoy his previously foreclosed arguments about the enhancement effects of two prior Texas burglary convictions.

Godoy's argument is well made but not well taken. The 2016 Guidelines' cross-reference to 18 U.S.C. § 16(b)—the so-called "residual clause" in the federal definition of "crime of violence"—is constitutionally unproblematic. Although the Supreme Court recently ruled § 16(b) was impermissibly vague as used in the Immigration and Nationality Act's crime-based removal provisions, we hold § 16(b) remains validly incorporated into the advisory Guidelines for definitional purposes. The residual clause retains residual life. And the bottom-line sentencing math thus turns out to be a wash: Godoy's total offense level is identical under both the 2015 and 2016 Guidelines.

No harm. No foul. No ex post facto.

We AFFIRM the district court's sentencing order as reformed.

## I. BACKGROUND

### A.    Godoy's Offense and the Sentencing Recommendations

Godoy was arrested for public intoxication on New Year's Eve 2015. Incident to the arrest, Immigration and Customs Enforcement officials detained Godoy for reentering the United States without consent following a previous deportation. Godoy was charged with illegal reentry after removal[2] and for having reentered "subsequent to a conviction for commission of an aggravated felony."[3] Godoy pleaded guilty.

The probation officer preparing the presentence report (PSR) compared sentencing under the 2015 Guidelines with sentencing under the 2016

---

[2] *See* 8 U.S.C. § 1326(a).

[3] *Id*. § 1326(b)(2).

2

No. 17-10838

Guidelines. The officer opted for the 2016 Guidelines, seeing no problem under the Ex Post Facto Clause.[4]

The PSR recommended a base offense level of eight under § 2L1.2(a) and an eight-level enhancement under § 2L1.2(b)(3)(B), which applies when a defendant has previously been convicted of a felony offense "for which the sentence imposed was two years or more." The enhancement reflected Godoy's two prior burglary convictions under Texas Penal Code § 30.02. The PSR also urged a three-level reduction for acceptance of responsibility.

Based on these calculations, Godoy received a total offense level of 13, which, coupled with his criminal history category of IV, resulted in a 2016 Guidelines range of 24–30 months.

## B.     Godoy's Objections to the Presentence Report

Godoy filed objections to the PSR's reliance on the 2016 Guidelines. He complained that using the 2016 Guidelines violated the Ex Post Facto Clause because those Guidelines post-dated his offense and yielded a higher total offense level than the 2015 Guidelines.

Godoy first argued that burglary of a habitation, Penal Code § 30.02, is not a "crime of violence" under § 2L1.2(b)(1)(A)(ii) (2015).[5] Under this theory, his two burglary convictions would not trigger the 16-level enhancement.[6]

---

[4] Both the 2015 and the 2016 Guidelines provide that "[t]he court shall use the Guidelines Manual in effect on the date that the defendant is sentenced" unless using those Guidelines "would violate the *ex post facto* clause of the United States Constitution." *See* U.S. SENTENCING GUIDELINES MANUAL § 1B1.11 (U.S. SENTENCING COMM'N 2016) [2016 U.S.S.G.]; U.S. SENTENCING GUIDELINES MANUAL § 1B1.11 (U.S. SENTENCING COMM'N 2015) [2015 U.S.S.G.].

[5] 2015 U.S.S.G. § 2L1.2 cmt. n.1(B)(iii) (defining "crime of violence" to include "burglary of a dwelling" under state law).

[6] The 2016 Guidelines abandoned the Special Offense Characteristics enhancements provided by the 2015 Guidelines at § 2L1.2(b)—including the 16-level enhancement under § 2L1.2(b)(1)(A)—opting instead for a more particularized system of enhancements. *See* 2016 U.S.S.G. § 2L1.2(b). In general, the new system provides for less enhancement than was previously available under § 2L1.2(b) of the 2015 Guidelines. This change in the 2016

No. 17-10838

Instead, Godoy would face only the four-level enhancement under subsection (b)(1)(D) for a prior conviction of "any other felony."[7] By Godoy's math, he deserved a base offense level of eight, a four-level enhancement under subsection (b)(1)(D), and a two-level reduction for acceptance of responsibility, resulting in a total offense level of 10. With a criminal history category of IV, his 2015 Guidelines range would be just 15–21 months, far preferable to the 2016 Guidelines range of 24–30 months.

In support of his argument that Texas Penal Code § 30.02 is not a crime of violence under § 2L1.2(b)(1)(A)(ii), Godoy urged that § 30.02 is broader than generic "burglary of a dwelling."[8] He acknowledged this argument was foreclosed by our then-controlling decision in *United States v. Uribe*.[9] But for preservation purposes, he asserted *Uribe* was wrongly decided.

Godoy also argued that he was not subject to an eight-level enhancement under § 2L1.2(b)(1)(C) (2015), which applies if a defendant was deported (or unlawfully remained in the United States) after an aggravated felony conviction. That provision adopts the definition of "aggravated felony" in 8 U.S.C. § 1101(a)(43), which in turn adopts the definition of "crime of violence" in 18 U.S.C. § 16[10]—a different "crime of violence" definition than in § 2L1.2(b)(1)(A)(ii).

---

Guidelines is what makes possible Godoy's ex post facto argument—that is to say, these changes raise the potential for a sentencing range disparity between the two versions of the Guidelines, and thus the potential for an ex post facto violation.

[7] *See* 2015 U.S.S.G. § 2L1.2(b)(1)(D).

[8] The 2015 Guidelines provide a 16-level enhancement for defendants deported after committing a "crime of violence." 2015 U.S.S.G. § 2L1.2(b)(1)(A)(ii). A crime of violence includes "burglary of a dwelling." *Id.* § 2L1.2 cmt. n.1(B)(iii). Because "burglary of a dwelling" is undefined in the Guidelines, we interpret it to encompass only "the elements contained in the generic, contemporary meaning of that offense." *United States v. Howell*, 838 F.3d 489, 494 (5th Cir. 2016).

[9] 838 F.3d 667, 670–71 (5th Cir. 2016).

[10] *See* 2015 U.S.S.G. § 2L1.2 cmt. n.3(A) (defining aggravated felony as the definition given by 8 U.S.C. § 1101(a)(43)); 8 U.S.C. § 1101(a)(43)(F) (listing "a crime of violence (as

4

Godoy argued that § 16(b) was unconstitutionally vague. And even if it were not, a § 30.02 burglary offense is not a crime of violence under § 16(b) because burglary does not pose a serious risk of violence. Godoy acknowledged our 2016 en banc decision holding that § 16(b) is not impermissibly vague as incorporated into the Guidelines.[11]

## C.     The Sentencing Hearing

The district court overruled Godoy's ex post facto arguments and adopted the PSR's findings and conclusions—including its use of the 2016 Guidelines. The court imposed a sentence of 27 months imprisonment with no term of supervised release. Godoy timely appealed.

## II. DISCUSSION

On appeal, Godoy re-urges that the Ex Post Facto Clause required the district court to apply the 2015 Guidelines to his 2015 offense.

An ex post facto violation occurs when "a defendant is sentenced under Guidelines promulgated after he committed his criminal acts and the new version provides a higher applicable Guidelines sentencing range than the version in place at the time of the offense."[12] Resolving Godoy's ex post facto claim requires interpreting the Guidelines. "This court reviews the district court's interpretation and application of the Sentencing Guidelines de novo."[13]

---

defined in section 16 of title 18, but not including a purely political offense) for which the term of imprisonment [is] at least one year" as an aggravated felony).

[11] *See, e.g.*, *United States v. Gonzalez-Longoria*, 831 F.3d 670, 675–77 (5th Cir. 2016), *cert. denied*, (U.S. May 14, 2018), and *abrogated by Sessions v. Dimaya*, 138 S. Ct. 1204 (2018). We recognize here that the broad statements in *Gonzalez-Longoria*—*i.e.*, "that 18 U.S.C. § 16(b) is not unconstitutionally vague," 831 F.3d at 672, and "that 18 U.S.C. § 16(b) is not unconstitutionally vague on its face," *id.* at 677—were abrogated by the Supreme Court's holding in *Dimaya*. But as explained below, we believe, and the Supreme Court's denial of cert seems to confirm, that *Dimaya* did not abrogate the decision of *Gonzalez-Longoria* that § 16(b) is not impermissibly vague *as used in the Guidelines*.

[12] *Peugh v. United States*, 569 U.S. 530, 533 (2013).

[13] *United States v. Olarte-Rojas*, 820 F.3d 798, 801 (5th Cir. 2016).

No. 17-10838

When this appeal began, Godoy reasserted that our 2016 *Uribe* decision was wrongly decided and that § 30.02 is not a crime of violence under § 2L1.2(b)(1)(A)(ii) because it is broader than generic burglary. The Government responded that, as Godoy acknowledged, Fifth Circuit caselaw foreclosed those arguments. But that caselaw has since changed. We therefore evaluate Godoy's arguments in light of these developments.

## A.     Our Recent En Banc Decision in *Herrold*

Turns out, Godoy was right about *Uribe*. After the parties filed their initial briefs, we decided *United States v. Herrold*.[14] There, we overturned *Uribe* and held that Texas Penal Code § 30.02(a)(1) and (a)(3) are indivisible and that (a)(3) makes a conviction under either subsection a conviction for an offense that is broader than generic burglary.[15] Accordingly, Godoy's convictions do not trigger the 16-level enhancement under § 2L1.2(b)(1)(A)(ii) because they no longer constitute crimes of violence as defined by the Guidelines in the commentary to that particular provision.[16]

After *Herrold*, the question became whether Godoy's convictions qualified as "aggravated felonies" for purposes of § 2L1.2(b)(1)(C). If so, Godoy would be subject to an eight-level enhancement, and his total offense level under the 2015 Guidelines would be the same as under the 2016 Guidelines. In that case, there would be no ex post facto violation. But if his convictions did not qualify as aggravated felonies, then Godoy would likely be, at most,

---

[14] 883 F.3d 517 (5th Cir. Feb. 20, 2018) (en banc).

[15] *Id.* at 529 ("In light of Texas case law, we hold that Texas Penal Code §§ 30.02(a)(1) and (a)(3) are not distinct offenses, but are rather separate means of committing one burglary offense. To the extent that it is inconsistent with this holding, we also overrule our earlier decision in *United States v. Uribe*.") (citation omitted); *id.* at 536 ("Texas's burglary offense allowing for entry and subsequent intent formation—is broader than generic burglary.").

[16] Although *Herrold* involved a sentence enhancement under the Armed Career Criminal Act (ACCA), how we interpret terms in the ACCA informs how we interpret the Guidelines. *See United States v. Bernel-Aveja*, 844 F.3d 206, 212–14 (5th Cir. 2016) (using cases interpreting burglary in the ACCA to define burglary in the Guidelines).

subject to the four-level enhancement under subsection (b)(1)(D). That would mean the district court's use of the 2016 Guidelines subjected Godoy to a higher sentencing range in violation of the Ex Post Facto Clause.

Because the initial briefing did not address this issue, we directed the parties to file "supplemental letter brief[s] regarding whether Godoy's prior convictions under Texas Penal Code § 30.02 qualify as aggravated felonies under U.S.S.G. § 2L1.2(b)(1)(C) (2015) and, particularly, whether those convictions constitute crimes of violence under 8 U.S.C. § 1101(a)(43)(F) / 18 U.S.C. § 16." The parties promptly complied.

Godoy asserted that, in light of *Herrold*'s holding that § 30.02(a)(1) and (a)(3) are indivisible, the offense of burglary no longer qualifies as a crime of violence under 18 U.S.C. § 16(b). But he acknowledged our prior decisions to the contrary.[17] He also reargued that § 16(b) is unconstitutionally vague.

The Government countered that, as Godoy conceded, we have repeatedly treated § 30.02 as a crime of violence under 18 U.S.C. § 16(b) and therefore an aggravated felony under 8 U.S.C. § 1101(a)(43)(F)—meaning § 30.02 is a qualifying felony under § 2L1.2(b)(1)(C). The Government also noted the Supreme Court has left no doubt that, when it comes to § 16(b) offenses, "[t]he classic example is burglary."[18] The Government maintained that Godoy's convictions subjected him to the eight-level enhancement under subsection (b)(1)(C), giving him the same total offense level under the 2015 Guidelines as under the 2016 Guidelines. Thus, there was no ex post facto violation.

**B.     The Supreme Court's Even More Recent Decision in *Dimaya***

Turns out, Godoy was right about 18 U.S.C. § 16(b), too—to an extent. After the parties filed their post-*Herrold* supplemental letter briefs, the

---

[17] *See, e.g.*, *United States v. Guadardo*, 40 F.3d 102 (5th Cir. 1994).
[18] *Leocal v. Ashcroft*, 543 U.S. 1, 10 (2004).

Supreme Court held in *Sessions v. Dimaya* that § 16(b), the catch-all clause in the definition of "crime of violence," is unconstitutionally vague as used in the INA's criminal-removal provisions.[19]

After *Dimaya* was handed down, Godoy filed a Rule 28(j) letter noting *Dimaya*'s holding and asserting that "*Dimaya*, combined with *Herrold* . . . resolves this appeal in favor of Mr. Godoy." The Government responded that *Dimaya* has no bearing on Godoy's appeal because, under *Beckles v. United States*, the Sentencing Guidelines are not subject to vagueness challenges.[20] Godoy replied that he does not claim vagueness in the Guidelines themselves.

In a later round of supplemental briefing, Godoy noted that "[i]n *Dimaya*, as in this case, the Government argued that an alien's prior conviction for a non-generic burglary offense was an 'aggravated felony' pursuant to 8 U.S.C. § 1101(a)(43)(F)." He then insisted that in the wake of *Dimaya*, § 16(b) "is not the law" and that it "logically follows that Texas burglary cannot *become* an aggravated felony by satisfying § 16(b)."

Under § 16(b), a crime of violence is any felony offense "that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."[21] If an offense meets this definition, it constitutes an aggravated felony under 8 U.S.C. § 1101(a)(43)(F). And if an offense falls under § 1101(a)(43), it justifies an eight-level enhancement under 2015 Guidelines § 2L1.2(b)(1)(C).[22] It is in

---

[19] *See* 138 S. Ct. 1204, 1210.

[20] *See Beckles v. United States*, 137 S. Ct. 886, 897 (2017) ("Because the advisory Sentencing Guidelines are not subject to a due process vagueness challenge, § 4B1.2(a)'s residual clause is not void for vagueness.").

[21] 18 U.S.C. § 16(b).

[22] *See* U.S.S.G. § 2L1.2 cmt. n.3(A) ("For purposes of subsection (b)(1)(C), 'aggravated felony' has the meaning given that term in section 101(a)(43) of the Immigration and Nationality Act (8 U.S.C. § 1101(a)(43)), without regard to the date of conviction for the aggravated felony.").

this context—the *Guidelines* context—that we must decide whether § 16(b) maintains any vitality following *Dimaya*'s invalidation of § 16(b) in the INA.

The Guidelines are not subject to vagueness challenges. So it does not necessarily follow from *Dimaya* that § 16(b) is unconstitutionally vague in the Guidelines context. To the contrary, any "distinction between a vagueness challenge to a statute incorporated into a Guideline and a vagueness challenge to the Guideline itself is untenable."[23] As Godoy's counsel conceded at oral argument, if the language of § 16(b) were cut-and-pasted directly into the Guidelines themselves, Godoy could not bring a void-for-vagueness challenge. This is no less true where the language of § 16(b) is incorporated into the Guidelines by reference. *Dimaya* itself spells out why.

In *Dimaya*, the Supreme Court explained that § 16(b) is just one cog in the INA regime that imposes definite sentencing and deportation consequences for aliens who commit aggravated felonies.[24] In the case of James Dimaya, the Immigration Judges concluded his convictions for first-degree burglary under California law qualified as "crimes of violence" under § 16(b).[25] He was therefore deportable *as a matter of law*. Therein lies the rub.

The Supreme Court held § 16(b) unconstitutional in *Dimaya* because the provision, like the ACCA's residual clause,[26] "produces more unpredictability and arbitrariness than the Due Process Clause tolerates."[27] But that presupposes the Due Process Clause's vagueness doctrine applies universally to every context in which § 16(b) is used. Such is simply not the case when

---

[23] *Gonzalez-Longoria*, 831 F.3d at 683 (Jones, J., concurring).

[24] *See Dimaya*, 138 S. Ct. at 1211, 1217.

[25] *Id*. at 1211.

[26] 18 U.S.C. § 924(e)(2)(B).

[27] *Dimaya*, 138 S. Ct. at 1223 (quoting *Johnson v. United States*, 135 S. Ct. 2551, 2558 (2015)).

§ 16(b) is used purely for its definitional content by the advisory-only Guidelines.[28]

In holding unconstitutional the INA's use of § 16(b) in *Dimaya*, and the ACCA's residual clause in *Johnson*,[29] the Supreme Court trained its sights on the haziness of definite legal consequences and the specter of capricious enforcement: "'The prohibition of vagueness in criminal statutes,' [the Supreme Court's] decision in *Johnson* explained, is an 'essential' of due process, required by both 'ordinary notions of fair play and the settled rules of law.'"[30] "These principles apply not only to statutes defining elements of crimes, but also to statutes *fixing sentences*."[31] Under this framework, "the Court has invalidated two kinds of criminal laws as 'void for vagueness': laws that *define* criminal offenses and laws that *fix the permissible sentences* for criminal offenses."[32]

For some offenses, the ACCA's residual clause acted to adjust a defendant's sentence from a mandated 10-year maximum to a mandated 15-year minimum with a maximum of life.[33] In *Johnson*, the Court thus held the provision unconstitutionally vague because the vagueness doctrine's principles

---

[28] *See United States v. Booker*, 543 U.S. 220, 245 (2005) (holding "the Guidelines effectively advisory"). In assessing Booker's Sixth Amendment challenge to the Guidelines, the Court reviewed prior constitutional challenges and reasoned that "everyone agrees that the constitutional issues presented by these cases would have been avoided entirely if Congress had omitted from the [Sentencing Reform Act of 1984 (SRA)] the provisions that make the Guidelines binding on district judges." *Id.* at 233. The Court went on to sever that provision from the SRA, rendering the Guidelines not binding on district judges and, most critically, abrogating the Court's previous holdings "that the Guidelines have the force and effect of laws." *Id.* at 234.

[29] *Johnson*, 135 S. Ct. at 2563.

[30] *Dimaya*, 138 S. Ct. at 1212 (quoting *Johnson*, 135 S. Ct. at 2557).

[31] *Johnson*, 135 S. Ct. at 2557 (citing *United States v. Batchelder*, 442 U.S. 114, 123 (1979) (emphasis added)).

[32] *Beckles v. United States*, 137 S. Ct. 886, 892 (2017) (emphasis in original).

[33] *See Johnson*, 135 S. Ct. at 2555.

applied in light of the provision's definite legal consequences.[34] Likewise, in the INA context, if a defendant's prior conviction meets the definition of § 16(b), the INA infrastructure mandates that the defendant is eligible for deportation.[35] In *Dimaya*, the Court thus held the INA's use of that provision impermissibly vague because, again, vagueness concerns were front and center given the scheme's definite legal consequences.[36]

But when § 16(b) is used by the nonbinding Guidelines solely for definitional purposes, vagueness-doctrine principles do not apply. That is because, as the Supreme Court explained in *Beckles*, "[t]he advisory Guidelines . . . do not implicate the twin concerns underlying vagueness doctrine— providing notice and preventing arbitrary enforcement."[37] Unlike the ACCA's residual clause and the INA infrastructure that relies on § 16(b), "the advisory Guidelines do not fix the permissible range of sentences" or proscribe conduct.[38] "To the contrary, they merely guide the exercise of a court's discretion in choosing an appropriate sentence within the statutory range."[39] Indeed, even were we to vacate Godoy's sentence, the district court could re-impose the exact same sentence.

---

[34] *See id.* at 2557 ("We are convinced that the indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges."); *see also Beckles*, 137 S. Ct. at 892 ("In *Johnson*, we applied the vagueness rule to a statute fixing permissible sentences.").

[35] *See Dimaya*, 138 S. Ct. at 1211. Notably, despite the extensive discussion of § 16(b)'s potential consequences and statutory uses, the *Dimaya* majority never mentions the Sentencing Guidelines. Nor were the Guidelines discussed at oral argument. *Dimaya* was an INA case, not a Guidelines case, so only so much can be read into this. But it is interesting that neither the majority nor the parties found the Guidelines relevant to the analysis of § 16(b)'s constitutional reach.

[36] *Id.* at 1213.

[37] *Beckles*, 137 S. Ct. at 894.

[38] *Id.* at 892.

[39] *Id.*

No. 17-10838

Godoy contends § 16(b) has been wholly nullified. He cites the Supreme Court's 2016 decision in *Welch v. United States* for the proposition that once a statute has been held constitutionally invalid, "it can no longer mandate or authorize any sentence."[40] But § 16(b) does not "mandate or authorize any sentence." And neither do the Guidelines, which is precisely why they are not subject to vagueness challenges. *Welch* dealt with the retroactivity of *Johnson*'s holding and reasoned that "[b]y striking down the residual clause as void for vagueness, *Johnson* changed the substantive reach of the ACCA, altering 'the range of conduct or the class of persons that the [Act] punishes.'"[41] *Dimaya*, on the other hand, did not change the substantive reach of § 16(b)—it at most changed the substantive reach of the INA. And at any rate, neither § 16(b)—a provision that functions independently of the INA and is found in an entirely different title of the United States Code—nor the advisory Guidelines themselves are substantive laws that fix sentences or proscribe conduct, making both wholly dissimilar to the ACCA's residual clause. Taken together, the Supreme Court's recent trio—*Johnson* (2015), *Beckles* (2017), and *Dimaya* (2018)—convinces us that the Guidelines' continued use of § 16(b) for definitional purposes is constitutionally inoffensive.

Godoy insists there is nothing left of § 16(b), that it was Supremely scrapped in *Dimaya*—every case, every context, every application. Godoy is mistaken. *Dimaya* held § 16(b) impermissibly vague as incorporated into the INA. But it did not repeal, abolish, or invalidate § 16(b) for all purposes under the legal sun.[42] Section 16(b) remains on the books, not purged from

---

[40] *Welch v. United States*, 136 S. Ct. 1257, 1265 (2016).

[41] *Id.* (quoting *Schriro v. Summerlin*, 542 U.S. 348, 353 (2004)).

[42] At oral argument, Godoy's counsel asserted that the effect of a Supreme Court holding of impermissible vagueness, such as in *Dimaya*, is that the invalidated provision "is void in toto, barring all further actions under it." *United States v. Petrillo*, 332 U.S. 1, 6 (1947). But that argument proves too much. It is certainly true the Government may no longer

existence—at least for confined uses. And until Congress acts or we are presented with binding authority to the contrary, § 16(b) remains incorporated into the advisory-only Guidelines for definitional purposes.[43]

## C.     Godoy's Ex Post Facto Claim

In light of our holding that § 16(b) remains a viable source of defining aggravated felonies under 2015 Guidelines § 2L1.2(b)(1)(C), we conclude that our precedent holding that Texas Penal Code § 30.02 satisfies § 16(b) survives *Dimaya*. Godoy suggests our en banc decision in *Herrold* is separate cause to reconsider that precedent, but we decline to read *Herrold* so broadly.

*Herrold* held that Penal Code § 30.02(a)(1) and (a)(3) are indivisible and ultimately broader than generic burglary, but nothing in our caselaw classifying § 30.02 as a crime of violence under § 16(b) turns on those points. We held in *United States v. Guadardo*, for example, "that burglary of a habitation under section 30.02 of the Texas Penal Code is *always* a crime of violence."[44] We did not say "*generic* burglary is always a crime of violence" or that "only § 30.02*(a)(1)* is always a crime of violence." Similarly, in *United States v. Flores*, we reasoned that "[u]nder § 16(b), it is clear that burglary of a residence fits within the classification of offenses that Congress intended to

---

prosecute anyone under a criminal provision held facially unconstitutional. But of course such a situation would involve, as *Petrillo* did, a statute that—unlike the Guidelines and § 16(b)—actually *proscribes conduct*.

[43] After deciding *Dimaya*, the Supreme Court denied the petition for certiorari in *Gonzalez-Longoria*, leaving undisturbed our bottom-line decision that § 16(b) is not unconstitutional when incorporated by reference into the Guidelines. And just days ago, the Eighth Circuit concluded, as we do today, that nothing in *Dimaya* declares § 16(b) impermissibly vague as used in the Guidelines. *United States v. Sanchez-Rojas*, 2018 WL 2171227, at *2 (8th Cir. May 11, 2018) ("Applying the *Beckles*/*Johnson* reasoning here, Sanchez-Rojas cannot maintain his vagueness challenge against U.S.S.G. § 2L1.2(b)(1)(C). We see no meaningful difference between a Guidelines section that uses the same language as a statute (like § 4B1.2(a)(2)) and a section that incorporates the statutory language by reference (like § 2L1.2(b)(1)(C)).").

[44] 40 F.3d 102, 105 (5th Cir. 1994) (emphasis added).

include" and noted further that "*[a]ny* burglary might be covered under this language."[45] Again, nothing in *Flores* limited our holding to the concept of a generic burglary or excluded a conviction under § 30.02(a)(3). And in *United States v. Cruz*, we reasoned that "[t]he district court . . . correctly concluded that Cruz'[s] prior conviction for burglary of a habitation qualified as a 'crime of violence' under § 4B1.1," a Guidelines provision that incorporated § 16.[46]

To put a finer point on it, nothing in our caselaw holding that Texas burglary qualifies as a crime of violence under § 16(b) turns on either a distinction between § 30.02(a)(1) and (a)(3) or a belief that those provisions capture only generic burglary. This makes sense because an offense under § 30.02(a)(1) and (a)(3) is one "that, by its nature, involves a substantial risk that physical force against the . . . property of another may be used in the course of committing the offense."[47] That is because both § 30.02(a)(1) and (a)(3) require entering a habitation or building "without the effective consent of the owner."[48]

---

[45] 875 F.2d 1110, 1113 (5th Cir. 1989) (emphasis added).

[46] *See United States v. Cruz*, 882 F.2d 922, 923 (5th Cir. 1989).

[47] 18 U.S.C. § 16(b). *See, e.g.*, *Flores*, 875 F.2d at 1113 ("Whenever a private residence is broken into, there is always a substantial risk that force will be used.").

[48] Tex. Penal Code § 30.02(a). For this reason, we find the analysis in our vehicle burglary cases instructive. *See, e.g.*, *Escudero-Arciniega v. Holder*, 702 F.3d 781, 784 (5th Cir. 2012) (per curiam) (analogizing New Mexico's vehicle-burglary offense to Texas's similar offense and noting "there is a 'substantial risk that physical force against the person or property of another may be used in the course of committing the offense' under the Texas statute"); *see also United States v. Rodriguez–Guzman*, 56 F.3d 18, 20 (5th Cir. 1995) ("the burglary of a . . . vehicle often involves the application of destructive physical force to the property of another"), *overruled on other grounds, as recognized in Ibarra–Leyva v. Johnson*, 623 F. App'x 163, 167 n.20 (5th Cir. 2015). Just as the offense of burglary of a vehicle requires the unlawful entry into a vehicle and thus presents an inherent substantial risk of the use of force against one's property, the offense of burglary of a building or habitation requires unlawful entry and thus presents a similarly inherent substantial risk of the use of force against one's property. And just as we extended this logic from vehicle burglary to unauthorized use of a motor vehicle—which differs from vehicle burglary only in that it does not require the intent to commit a felony or theft—we find the same logical extension applies as between Texas Penal Code § 30.02(a)(1) and (a)(3), where subsection (a)(3) differs most significantly in that it does not have as an element the intent to commit a further felony,

Because unlawful entry inherently produces a substantial risk of physical force against one's property, there is no meaningful difference between § 30.02(a)(1) and (a)(3)—and therefore no lesson to be learned from *Herrold*—when it comes to categorizing an offense under those provisions as a crime of violence under § 16(b). Our existing caselaw indicating that any conviction under Penal Code § 30.02 categorically qualifies as a crime of violence under § 16(b) is thus unaffected by *Herrold*'s holding that § 30.02(a)(1) and (a)(3) are indivisible and broader than generic burglary. As a result, Godoy's total offense level under the 2015 Guidelines is the same as under the 2016 Guidelines, making the district court's use of the 2016 Guidelines trouble-free under the Ex Post Facto Clause.

## D.     The Conviction Must Be Reformed

While *Dimaya* does not forbid using § 16(b) to calculate recommended sentences under the nonbinding Guidelines, we recognize that *Dimaya* very clearly speaks to situations where a sentencing maximum or minimum is statutorily fixed. That is quite the point of *Beckles*.[49]

Godoy was convicted under 8 U.S.C. § 1326(a) and sentenced pursuant to the 20-year maximum provided by § 1326(b)(2) for defendants previously convicted of an aggravated felony. Sentencing Godoy under § 1326(b)(2) thus required exactly what the Supreme Court held to be unconstitutional in *Dimaya*: The district court relied on the INA's definition of aggravated felony found in § 16(b) to justify using a statutory provision that provides a definite legal consequence—an increased, 20-year maximum.

---

theft, or assault. *See United States v. Galvan-Rodriguez*, 169 F.3d 217, 219 (5th Cir. 1999) ("Just as burglary of a vehicle involves a substantial risk that property might be damaged or destroyed in the commission of the offense, the unauthorized use of a vehicle likewise carries a substantial risk that the vehicle might be broken into . . . .").

[49] *See Beckles*, 137 S. Ct. at 892.

No. 17-10838

The difference between § 1326(b)(2) and the advisory Guidelines highlights the holding of *Beckles* and reinforces our decision here. The Guidelines do not "*fix the permissible sentences* for criminal offenses."[50] Section 1326(b)(2) does. Godoy's conviction must therefore be reformed[51] to reflect that he was sentenced according to 8 U.S.C. § 1326(b)(1), which provides for a 10-year maximum sentence for a defendant "whose removal was subsequent to a conviction for commission of . . . a felony (other than an aggravated felony)."[52] As Godoy was sentenced to 27 months imprisonment, this reformation does not require alteration to the ordered sentence.

## III. CONCLUSION

*Dimaya* did not rewrite the federal sentencing script. Section 16(b) remains validly incorporated into the Guidelines for definitional purposes, and Godoy's sentence offends neither vagueness nor ex post facto principles.

For the above reasons, we REFORM the district court's sentencing order and AFFIRM as reformed.

---

[50] *Id.* (emphasis in original).

[51] *See United States v. Mondragon-Santiago,* 564 F.3d 357, 369 (5th Cir. 2009).

[52] 8 U.S.C. § 1326(b)(1).